<u>                        </u>UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA          :

v.                                :     Case No. 3:06CR81(AHN)

JEANETTE FOXWORTH                 :


<u>RULING ON PENDING MOTIONS</u>

     Defendant Jeannette Foxworth ("Foxworth") is charged in a
nine-count indictment with one count of conspiracy to violate
federal laws as set forth in 18 U.S.C. § 371; five counts of theft
of honest services through wire fraud in violation of 18 U.S.C. §
1343; and three counts of making a false statement to a federal law
enforcement officer in violation of 18 U.S.C. § 1001.  The grand
jury returned the indictment against Foxworth on April 6, 2006.  On
July 27, 2006, Foxworth filed three motions that are currently
pending before the court, namely: (1) a motion for change of venue
and for transfer from the Bridgeport seat of court due to pretrial
publicity[1] [doc. # 20]; (2) a motion to dismiss counts seven,
eight, and nine of the indictment [doc. # 23]; and (3) a motion to
strike prejudicial surplusage from the indictment [doc. # 26].

     I. <u>Change of Venue/Transfer to New Haven Seat of Court</u>

     Foxworth argues in her motion to transfer that she cannot
receive a fair trial due to the pretrial publicity generated by the

_____

     [1] According to Foxworth's motion and memorandum in support,
she is actually seeking a transfer of her case to a court within
the district, i.e., to New Haven, rather than a change of venue.

Connecticut Post, a local Bridgeport newspaper.  In response, the government asserts that pretrial publicity does not preclude Foxworth from receiving a fair trial with an impartial jury, as the judge can engage in extensive voir dire of prospective jurors to determine whether they will be fair and impartial in Foxworth's trial.

In the indictment, Foxworth is accused of conspiring with an unnamed "public official."  That public official is former state senator Ernest "Ernie" Newton, II ("Newton") of Bridgeport. Foxworth argues that the overwhelming publicity garnered by former Senator Newton's corruption charges and court proceedings will preclude her from receiving a fair trial.  Foxworth cites to approximately sixty-five Connecticut Post newspaper articles that contain Newton's name in the headline in relation to corruption in office, and forty other articles that mention Newton's corruption charges peripherally.  Because Foxworth is associated with Newton, she argues, the negative and excessive publicity generated about him will be imputed to her.  She seeks to have this case removed to the New Haven seat of court, because the Connecticut Post, a Bridgeport newspaper with regional circulation, is the main newspaper generating negative publicity.

In support of her argument, Foxworth cites to United States v. Maldonado-Rivera, 922 F.2d 934, 966-67 (2d Cir. 1990), and two dissenting opinions authored by Justice Marshall in Lee v. Georgia,

488 U.S. 879 (1988), and Swindler v. Lockhart, 495 U.S. 911 (1990).

In Maldonado-Rivera, the court denied a motion for change of venue based on pretrial publicity because only one article mentioned the names of the defendants in the headline, and the defendants generated some of the publicity themselves.  See United States v. Maldonado-Rivera, 922 F.2d 934, 967 (2d Cir. 1990). Foxworth seeks to distinguish her case from Maldonado-Rivera, in that her trial is centrally focused on her association with one person, Newton, whereas in Maldonado-Rivera, where the defendants' request for change of venue was denied, the pre-trial publicity was focused on the alleged crime committed, namely robbery, and not the individual defendants.  See id.

Further, Foxworth claims that, unlike United States v. Yousef, 327 F.3d 56 (2d Cir. 2003), where a motion to change venue due to pretrial publicity was denied in part because the World Trade Center disaster was nationally known and the publicity in relation to the defendant had subsided, the trial publicity in this case is localized to the Connecticut Post's circulation area, and a transfer to a different seat of court within the district would alleviate the risk of impaneling a biased jury.  See id. at 155.

In its response, the government argues that Foxworth has failed to show that there is a "reasonable likelihood that prejudicial news prior to trial will prevent a fair trial."  United States v. Maldonado-Rivera, 922 F.2d 934, 966-67 (2d Cir. 1990)(quoting Sheppard v. Maxwell, 384 U.S. 333, 363 (1966)).  The

3

government notes that jurors' knowledge of a crime and the accused
is insufficient to warrant a transfer of venue.  See Murphy v.
Florida, 421 U.S. 794, 799 (1975); United States v. Volpe, 42 F.
Supp. 2d 204, 218 (E.D.N.Y. 1999).  The government further asserts
that careful questioning of jurors during voir dire is accepted as
an effective tool to determine the impartiality of jurors.  See
United States v. Yousef, 327 F.3d 56, 155 (2d Cir. 2003).  The
court can only presume prejudice, the government argues, where the
media's coverage of the defendant has been so inflammatory that the
court cannot believe the jurors' responses during voir dire.  Such
circumstances are rare and extreme.  See United States v. Salim,
151 F. Supp. 2d 281, 281-82 (S.D.N.Y. 2001).  The government also
points out that the media coverage prior to this trial, while
steady, has been neither "massive nor pernicious."  See Maldonado-
Rivera, 922 F.2d at 967.

Maldonado-Rivera is instructive on this issue.  There, the
court noted that the Hartford Courant averaged just over one story
per week over a three-year period about the crimes in which the
defendants were involved.  In this case, stories in the Connecticut
Post regarding Newton averaged less than one story per week in the
twenty-month period after Newton's indictment in January 2005.  In
those articles, Foxworth was identified only three times, similar
to the facts in Maldonado-Rivera, where the defendant's name
appeared in only one article.  Foxworth has also caused some of the
pretrial publicity herself, as the defendants in Maldonado-Rivera

4

did.

Indeed, in the February 19, 2005 article in the Connecticut Post entitled Feds Investigating Loan to Newton, the Connecticut Post interviewed Foxworth for the story, in which she asked, "Why did the state not monitor that money more closely?" in reference to the suspicious origins of the $500 she received from Newton. Foxworth's willingness to voluntarily insert herself into this article and two others written about her involvement with Newton further demonstrates that she helped to generate some of the pretrial publicity. In addition, the court agrees with the government's argument that the jury pool will not consist solely of Bridgeport residents, and it is possible some jurors will not know about Newton's conviction at all.

Interestingly, out of the approximately one hundred and five articles she relies on in support of her pre-trial publicity argument, Foxworth only identifies three articles in which she is directly implicated: Feds Investigating Loan to Newton, Conn. Post, Feb. 19, 2005; Newton Associates Eyed in FBI Probe, Conn. Post, Feb. 5, 2006; Newton Associate Indicted on Charges, Conn. Post, Apr. 6, 2006. And in those three articles, the focus of the publicity -- and indeed, the focus of Foxworth's argument -- is on the publicity surrounding Newton, not Foxworth. While the Connecticut Post identified Foxworth in the three articles mentioned above, the description of her involvement in Newton's corruption charges has been minimal. Further, Foxworth contributed

5

to the pretrial publicity by speaking to the <u>Connecticut Post</u> regarding the subject matter of the charges.  As set forth in <u>Yousef</u> and in many other cases in this circuit, the court shall ensure that careful questioning of jurors take place during voir dire to determine if they are biased against Foxworth based on pretrial publicity.  This safeguard will protect Foxworth's right to an impartial trial.

Foxworth has failed to prove that there is a reasonable likelihood that she will not receive a fair trial based on pretrial publicity, and her motion [doc. # 20] is therefore denied without prejudice to renew at the time of jury selection.

II.  <u>Dismissal of Charges from the Indictment</u>

Foxworth moves to dismiss count seven of the indictment because, she argues, she did not make a false statement to federal officers.  She also moves to dismiss counts eight and nine as multiplicitous in that they are both based on the same false statement and should therefore be dismissed.  In opposition, the government argues that the indictment complies with the requirements of Fed. R. Crim. P. 7(c), which requires a plain and concise statement of the offenses committed, and that multiplicitous counts are not violative of Foxworth's rights until the conviction stage of the proceeding, because only at that time is the Double Jeopardy Clause triggered.  The court agrees.

A.   <u>Count Seven</u>

Count seven of the indictment alleges that Foxworth made a materially false statement to FBI special agents by stating that "she provided three checks to [Newton] made payable to [Newton]'s election campaign when she then and there well knew that, in fact, she provided, and caused to be provided, five checks to [Newton] made payable either to 'cash' or to a member of [Newton]'s family whose name is known to the Grand Jury, and not to [Newton]'s election campaign."

Foxworth argues that the FBI Form 302 documenting her January 31, 2005 interview reflects that the agents showed her four checks, to which Foxworth responded that she had either signed or authorized each of them.  Foxworth argues that because she identified the checks that the agents showed her, she did not knowingly and willfully make a false statement in violation of 18 U.S.C. § 1001.  Foxworth cites to no case law in support of her motion to dismiss count seven of the indictment.

In response, the government contends that pursuant to Fed. R. Crim. P. 7(c), the indictment must only contain a short, concise statement of the charged offense, which must be accepted as true. The government argues that it met the requirements in Rule 7(c), and Foxworth cannot look beyond the indictment to extrinsic evidence, such as the Form 302, to seek dismissal of the grand jury's charges against her.  The government also maintains that

7

this motion, which tests the sufficiency of the government's evidence, is not properly brought under Fed. R. Crim. P. 12(b), which only allows a challenge "that the court can determine without a trial of the general issue."  See Fed. R. Crim. P. 12(b); see also United States v. Alfonso, 143 F.3d 772, 776-77 (2d Cir. 1998) (noting that a motion to dismiss is an inappropriate forum for a defendant to challenge the substance of the evidence against her).

Contrary to Foxworth's claim, the only way to determine whether her statements to federal agents meet the elements of the offense set forth in count seven of the indictment is through a jury trial.  See United States v. Knox, 396 U.S. 77, 83, n.7 (holding that where a defendant seeks to dismiss charges based on a claim that he had not willfully made a false statement, the jury must make that determination, not the court).

As the court cannot consider evidence outside the indictment on a motion to dismiss, the FBI Form 302 cannot be relied upon in ruling on the motion.  Because the indictment contains a short, concise statement of the charged offense pursuant to Fed. R. Crim. P. 7(c), Foxworth's motion to dismiss as to count seven is denied.

B.   Counts Eight and Nine

Foxworth argues that counts eight and nine, which both allege that she made false statements to federal law enforcement officers, are multiplicitous.  Count eight alleges that Foxworth stated to a federal agent that "she never asked [Newton] to provide $500 from his 2004 Campaign Committee to A.E. so that A.E. could donate money

8

to the East End Community Council when she then and there well knew that, in fact, she asked [Newton] to provide $500 from his 2004 Campaign Committee to A.E. so that A.E. could donate the money to the East End Community Council."  Count nine alleges that Foxworth stated to federal agents that "the purpose of the $500 she sought from [Newton] 'strictly' was to repay part of a loan she previously made to [Newton], when she then and there well knew that, in fact, the purpose of the $500 she sought from [Newton] was not 'strictly' to repay part of a loan previously made to [Newton]."

Foxworth contends that counts eight and nine refer to the same false statement involving the $500 that Newton provided to her and she argues that they stem from the same "unit of prosecution," and therefore should be considered as one offense.  See United States v. Song, 934 F.2d 105, 108 (7th Cir. 1991).  Multiplicity, she argues, is violative of the Double Jeopardy Clause of the Fifth Amendment, as it involves a single offense -- one "unit of prosecution" -- arbitrarily divided into additional separate counts.  See United States v. Nakashian, 820 F.2d 549 (2d Cir. 1987).  Foxworth asserts that the unit of prosecution here is the purpose of Newton's payment of the $500 to her.

The government counters that Foxworth is charged with the offense of making a false statement to a federal officer, and in this instance, Foxworth made two separate false statements with respect to the $500 that Newton gave her.  As alleged in count eight, she first stated that she did not ask Newton to provide the

9

$500 from his campaign fund for A.E. to donate it to the East End Community Council.  The second statement, as alleged in count nine, was that Newton gave her the $500 for the sole purpose of repaying a loan she had made to him.  According to the government, one of these false statements pertains to the source of the money and the motive for Newton's payment, the other pertains to the purpose of the payment.

The only way multiplicitous counts in an indictment can violate the Double Jeopardy Clause of the Fifth Amendment is if a jury convicts on both counts, which can result in two punishments for the same crime.  See United States v. Chacko, 169 F.3d 140, 145 (2d Cir. 1999).  In such situations, the court must wait until the jury returns its verdict before dismissing counts in the indictment as multiplicitous.  See United States v. Josephsburg, 459 F.3d 350, 355-56 (2d Cir. 2006) (stating that the Double Jeopardy Clause affords the defendant protection only when the jury convicts on more than one multiplicitous count, as the court then must enter judgment as to only one of the counts).

Upon review of the case law, it is clear that the Second Circuit has held that the appropriate time to decide whether counts in an indictment are multiplicitous is after the jury convicts on more than one of the multiplicitous counts.  See id.  Until that time, no violation of the defendant's constitutional rights has occurred.  See id.  Accordingly, Foxworth's motion to dismiss [doc. # 23] as to counts eight and nine of the indictment as

10

multiplicitous is denied without prejudice to renew at the close of trial, if and when she is convicted of both counts.

III.   Motion to Strike Prejudicial Surplusage from the Indictment

Foxworth argues that the government's use of "also known as" or "a/k/a" references to various forms of her name in the indictment is prejudicial and irrelevant.[2]  She asserts that the reference to aliases has no probative value and should be stricken pursuant to Fed. R. Crim. P. 7(d), which allows the court to strike surplusage from the indictment.

The government argues in response that the aliases are relevant to the evidence that will be introduced at trial, as Foxworth identified herself using these aliases while committing the crimes set forth in the indictment.  The government asserts that she also identified herself in documents and in audio-taped conversations with Newton using these aliases.

When, as here, such alias evidence is relevant and admissible, the court will not strike it from the indictment, even if it is highly prejudicial.  See United States v. Hernandez, 85 F.2d 1023, 1030 (2d Cir. 1996).  Aliases are admissible for purposes of identification or to link evidence of the crime to the defendant. See United States v. Mitchell, 328 F.3d 77, 83 (2d Cir. 2003). Foxworth has provided nothing but conclusory assumptions regarding

---

[2] The indictment lists the defendant as "Jeanette Foxworth aka [sic] Jeanette F. Elliott aka Jeanette D. Elliott aka Jeanette S. Foxworth aka Jeanette Foxworth Elliott aka Jeanette S. Foxworth-Elliott aka Jeanette S. Elliott."

the alleged prejudice she will suffer.

Because it appears that the checks that Foxworth and Newton exchanged as well as other relevant documents contain the aliases, and that witnesses that the government will present at trial will use these variations of Foxworth's name, the aliases are relevant and admissible.  Accordingly, Foxworth's motion to strike surplusage from the indictment [doc. # 26] is denied.

CONCLUSION

For the foregoing reasons, Foxworth's motion for change of venue and for transfer from the Bridgeport seat of court [doc. # 20] is denied without prejudice to renew at the time of jury selection; her motion to dismiss [doc. # 23] as to count seven of the indictment is denied; her motion to dismiss [doc. # 23] as to eight and nine of the indictment is denied without prejudice to renew at the close of trial; and her motion to strike prejudicial surplusage from the indictment [doc. # 26] is denied.

SO ORDERED this _____ day of November, 2006 at Bridgeport, Connecticut.


_____/s/_____
       Alan H. Nevas
United States District Judge